1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALCIDE DOUCET,                              No.  2:12-cv-0031 GEB KJN P

12                   Petitioner,

13            v.                                 FINDINGS & RECOMMENDATIONS

14   G. SWARTHOUT, Warden,

15                   Respondent.

16

17   I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for attempted

20   murder, assault with a firearm, corporal injury to a cohabitant, and two counts of criminal threats,

21   with enhancements for personal use of a firearm and inflicting great bodily injury.  Petitioner was

22   sentenced to 30 years to life in state prison.  Petitioner claims that:  (1) he suffered ineffective

23   assistance of trial counsel, (2) the trial court erred by failing to sua sponte instruct the jury that

24   petitioner's out of court admissions should be viewed with caution, and (3) the trial court erred by

25   failing to instruct on the lesser included offense of attempting to make a criminal threat.  After

26   careful review of the record, this court concludes that the petition should be denied.

27   ////

28   ////

1

1

II. <u>Procedural History</u>

2

On November 24, 2009, the district attorney filed an information in the San Joaquin

3

County Superior Court, charging petitioner with:  attempted murder (count one), allegations that

4

the crime was willful, deliberate and premeditated, and petitioner inflicted great bodily injury on

5

the victim; first degree residential burglary (count two), allegation that another person was

6

present in the residence during the commission of the crime; assault with a firearm (count three);

7

infliction of corporal injury to a cohabitant (count four); and criminal threats (counts five and

8

six).  As to all counts, the information alleged that petitioner personally used a firearm.  As to

9

counts three and five, the information alleged personal infliction of great bodily injury under

10

circumstances involving domestic violence; and as to count six, the information alleged personal

11

infliction of great bodily injury.  (Clerk's Transcript ("CT") 272-79.)

12

On February 24, 2010, the jury found petitioner guilty on all counts, except count two.

13

(CT 327-28, 330, 337-38, 341, 344, 346; Reporter's Transcript ("RT") 908-12.)  With respect to

14

count one, the jury found the premeditation allegation to be not true.  (CT 328, 331; RT 908.)

15

With respect to counts one, five and six, the jury found all allegations to be true.  (CT 328, 332-

16

35, 345, 347-48; RT 908-12.)  With respect to counts three and four, the jury found the

17

allegations of use of a firearm to be true and the allegations of infliction of great bodily injury to

18

be not true.  (CT 328, 339-40, 342-43; RT 910-11.)

19

On April 14, 2010, the trial court denied petitioner's motion for new trial and to strike the

20

twenty-five-years-to-life enhancement for personally using a firearm.  (RT 921.)  Petitioner was

21

sentenced to thirty years to life in state prison.[1]  (RT 935; CT 592-602.)

22

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

23

District.  The Court of Appeal affirmed the conviction on August 18, 2011.  (ECF No. 11-1.)

24

////

25

26

27

28

[1]  Petitioner was sentenced to the low term of five years on count one, plus twenty-five years to life; three years on count three, plus four years for the firearm enhancement, to be served concurrently; count four stayed pursuant to California Penal Code § 654; the mid-term of two years on count five, plus four years for the firearm enhancement, to be served concurrently; and the mid-term of two years on count six, plus four years for the firearm enhancement, to be served concurrently.  (CT 592-602; RT 920-21; 935.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on November 22, 2011, without comment.  (Respondent's Lodged Document 5.)

Petitioner filed the instant petition on January 5, 2012.  (ECF No. 1.)

III.  Facts[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant was Julie Turner's boyfriend for 11 to 12 years, but their relationship was unclear in November 2008.  About four weeks earlier, Turner told defendant she was considering dating a friend.
>
> In the early morning of November 9, 2008, defendant went to Turner's home and forced open the front door.  Turner heard a crash and woke up to find her bedroom light on and defendant standing over her bed, pointing a gun at her head.
>
> Defendant had a silver .25-caliber semiautomatic pistol in his hand. He told Turner, "Why do you do me that way?" or "I know you had him here last night."  Turner testified that defendant hit her twice on the head with the hand which held the gun.  She told the police that defendant hit her five to seven times in the back of the head with his gun.
>
> Meanwhile, Turner's neighbor Joe Hernandez went outside to investigate a loud bang.  He noticed Turner's door was open and heard two people arguing inside.  He got his black .380-caliber semiautomatic pistol from home and walked toward Turner's house, where he heard a man's voice yelling loudly at Turner, who was screaming and telling the man to stop.
>
> Hernandez entered Turner's home and went to the bedroom, where he saw defendant holding Turner by the hair and raising back his right hand, which held a chrome plated gun.  Defendant said, "I'm going to kill you, bitch."  Hernandez, with his gun drawn, told defendant to put down the gun and stop.  Defendant turned towards Hernandez told him, "Fuck you," and "I'm going to kill you, mother fucker," and started shooting.
>
> Defendant fired two shots at Hernandez, who returned fire until his gun was empty.  Defendant then pulled Hernandez toward him, and they started fighting.  The struggle ended when Hernandez managed to flip defendant to the ground.  Hernandez then jumped on defendant and threw defendant's gun into the living room.

---

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Doucet, No. SF110108A (August 18, 2011), a copy of which was lodged by respondent as Exhibit A to the answer filed April 6, 2012.

3

Defendant said he was going to kill Hernandez and kept trying to get up, so Hernandez hit him on the head with his gun.  When defendant stopped struggling, he kept asking, "Why did she do this to me?"

Hernandez was shot through his right foot and sustained a fracture at the base of his second toe.  Hernandez could not walk for two months, after which his foot would hurt if he walked for a long time.  He and his wife moved to a new house, as he no longer felt comfortable living in his house.

Turner sustained a large bruise on the back of her head and a concussion.  Her injury was most likely the result of being struck with a hard object such as a gun.  She could have received the injury from being struck with fists, but the blows would have to come from someone really strong, like a professional boxer.

According to Turner, defendant had let go of her hair when Hernandez entered her bedroom and told defendant to stop.  Defendant tripped over the blankets and fell after Hernandez entered.  Defendant's gun went off when he fell; Turner did not see defendant fire it, but he had no gun when he got up from the floor.  She told the police that defendant fired his gun two or three times.  Turner denied that defendant threatened either Hernandez or herself, although she told the police that defendant threatened to kill both of them.

At trial and in her police interview, Turner declared she was not scared that defendant would kill her.  A police officer testified that Turner was distraught after the incident, and that Turner later said defendant would have killed her if Hernandez had not arrived.  Turner told the officer defendant used his fists and his gun to beat her.  She did not recall how many times defendant struck her, but said, "He kept on beating me." Defendant told Turner, "Don't lie to me.  I know you have [ sic ] him here last night."

Police found two .25-caliber and two .380-caliber casings in Turner's bedroom, along with three .380-caliber casings in the hallway.  There was a bullet hole on the southeast corner of the bedroom and four bullet holes on the south wall under the window.  Police found nine live .25-caliber rounds in defendant's pants pockets.

Defendant testified that he drank nearly a fifth of brandy before going to Turner's house.  He did not intend to hurt Turner and went there to talk about their relationship.  Defendant thought he saw someone on the sofa in Turner's living room.  He remembered seeing a man at the door who said, "Hey," and started shooting at him.  Defendant denied firing a gun that night, and did not remember hitting Turner.  He did not remember struggling with a man or threatening him.

(People v. Doucet, slip op. at 2-4.)

////

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003).  Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at a different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer, 538 U.S. at 75 (it is "not

1   enough that a federal habeas court, in its independent review of the legal question, is left with a

2   'firm conviction' that the state court was 'erroneous.'") (internal citations omitted).  "A state

3   court's determination that a claim lacks merit precludes federal habeas relief so long as

4   'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

5   Richter, 131 S. Ct. 770, 786 (2011).

6        The court looks to the last reasoned state court decision as the basis for the state court

7   judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned decision,

8   "and the state court has denied relief, it may be presumed that the state court adjudicated the

9   claim on the merits in the absence of any indication or state-law procedural principles to the

10  contrary."  Richter, 131 S. Ct. at 784-85.  That presumption may be overcome by a showing that

11  "there is reason to think some other explanation for the state court's decision is more likely."  Id.

12  at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

13       "When a state court rejects a federal claim without expressly addressing that claim, a

14  federal habeas court must presume that the federal claim was adjudicated on the merits – but that

15  presumption can in some limited circumstances be rebutted."  Johnson v. Williams, 133 S. Ct.

16  1088, 1096 (Feb. 20, 2013).  "When the evidence leads very clearly to the conclusion that a

17  federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de

18  novo review of the claim.  Johnson, 133 S. Ct. at 1097.

19       Where the state court reaches a decision on the merits but provides no reasoning to

20  support its conclusion, the federal court conducts an independent review of the record.

21  "Independent review of the record is not de novo review of the constitutional issue, but rather, the

22  only method by which we can determine whether a silent state court decision is objectively

23  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

24  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

25  basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.  "[A] habeas court must

26  determine what arguments or theories supported or, . . . could have supported, the state court's

27  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

28  ////

6

1    arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

2    786.

3    V.  Petitioner's Claims

4         A.  Ineffective Assistance of Counsel

5         Petitioner claims that trial counsel was ineffective based on his failure to request an

6    instruction on any lesser offenses for attempted murder in count one.  Counsel failed to seek an

7    instruction on the lesser offense of assault with a firearm.  (ECF No. 1 at 28.)  Petitioner argues

8    that trial counsel inexplicably failed to seek such an instruction despite explicitly arguing in his

9    motion for new trial that petitioner was guilty of assault with a firearm rather than attempted

10   murder due to petitioner's intoxication.  (ECF No. 1 at 30.)  Petitioner contends there can be no

11   conceivable tactical reason why trial counsel failed to request such an instruction given that he

12   was aware that his theory of the case was consistent with a conviction on this lesser offense.  If

13   jurors believed trial counsel, their only two options were to convict petitioner of attempted

14   murder or acquit him of any charges related to the shooting.

15        In addition, petitioner argues that the trial court had a sua sponte duty to instruct on

16   attempted voluntary manslaughter, and trial counsel unreasonably declined the trial court's offer

17   to so instruct the jury.  Petitioner contends that there was evidence before the jury to support two

18   separate theories, (1) the unlawful killing of another person without malice 'upon a sudden

19   quarrel or heat of passion,' and (2) "imperfect" or "unreasonable" self-defense, which would have

20   supported a verdict of attempted voluntary manslaughter.  Because such factual determinations as

21   to heat of passion and petitioner's good faith belief were questions for the jury, petitioner argues

22   that trial counsel was unreasonable in failing to agree with the trial court to have the jury

23   instructed as to attempted voluntary manslaughter.  Despite trial counsel declining the instruction

24   based on his chosen trial strategy, petitioner argues that counsel's decision to forego the

25   attempted voluntary manslaughter instruction was unreasonable, and was based on a

26   misconception that such an instruction would have been inconsistent with counsel's theory of

27   voluntary intoxication.  Petitioner contends that heat of passion and imperfect self-defense are

28   entirely consistent with a theory of voluntary intoxication.  (ECF No. 1 at 41.)  In addition,

because California Penal Code § 12022.53 does not apply to the crime of attempted voluntary manslaughter, trial counsel's failure to agree to the attempted voluntary manslaughter instruction deprived petitioner of an opportunity to avoid the 25 year to life firearm enhancement.  Petitioner argues that, based on the evidence against him, a diligent and conscientious advocate would not have gambled that the jury would acquit petitioner on count 1 based on voluntary intoxication.

Finally, petitioner contends he was prejudiced by counsel's ineffective assistance because the jury did not believe that petitioner acted willfully and deliberately in shooting Hernandez. Based on the evidence at trial, petitioner contends the jury could have believed that petitioner fired at Hernandez because petitioner was provoked by intense emotion or had a good faith belief he needed to defend his life.  However, because the jury had no other alternative but the attempted murder instruction, the jury was left with an all or nothing choice.  Whereas if the jury had been instructed as to attempted voluntary manslaughter, petitioner contends there was a reasonable probability the result would have been different.

Respondent counters that because there is nothing in the record to demonstrate that the prosecution would have agreed to a lesser related instruction on assault with a firearm, the state court had a rational basis for finding that defense counsel was not ineffective for failing to request such an instruction.  Respondent also argues that because trial counsel had a reasonable tactical purpose for not requesting an instruction on attempted voluntary manslaughter, the state court's rejection of this claim was reasonable.

### 1.   State Court Decision

The last reasoned rejection of petitioner's ineffective assistance of counsel claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant contends trial counsel was ineffective in failing to request instructions for assault with a firearm and attempted voluntary manslaughter as lesser included offenses of the attempted murder charge.  We disagree.
>
> "To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e.,

representation below an objective standard of reasonableness, but also resultant prejudice.  [Citation.]'" (*People v. Hart* (1999) 20 Cal.4th 546, 623, 85 Cal.Rptr.2d 132, 976 P.2d 683.) "Prejudice occurs only if the record demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (*People v. Lucero* (2000) 23 Cal.4th 692, 728, 97 Cal.Rptr.2d 871, 3 P.3d 248.)

Trial counsel's strategy was that defendant was too intoxicated to form the intent to kill mental element of attempted murder. Asserting the evidence would support a conviction for assault with a firearm, defendant argues counsel's failure to ask for the instruction left the jury with no choice but to convict defendant of attempted murder or acquit him of any charges related to the unjustified shooting.   Defendant  concludes  there  was  "no conceivable tactical reason" for trial counsel's choice, and defendant was prejudiced as a result.

Defendant is wrong.  Assault with a firearm is a lesser related offense of attempted murder. (*People v. Parks* (2004) 118 Cal.App.4th 1, 6, 12 Cal.Rptr.3d 635.)  A defendant has no right to insist that the trial court instruct on a lesser related offense over the prosecutor's objection.  (*People v. Birks* (1998) 19 Cal.4th 108, 112-113, 119, 120, 136, 77 Cal.Rptr.2d 848, 960 P.2d 1073.)  In this case, there is nothing in the record to show the prosecutor would have agreed to a request for a lesser related offense instruction on the attempted murder charge.  Trial counsel's failure to ask for such an instruction was neither substandard nor prejudicial.

Defendant asserts the evidence supported an instruction on attempted voluntary manslaughter as a lesser included offense of attempted murder.   Recognizing defense counsel specifically declined an instruction on the lesser included offense, defendant asserts counsel's decision constitutes ineffective assistance.

Attempted voluntary manslaughter is a lesser included offense of attempted murder.  (*People v. Thompkins* (1987) 195 Cal.App.3d 244, 255-256, 240 Cal.Rptr. 516.)  Unlike attempted murder, it requires an intent to kill but not malice aforethought.  (*People v. Tucciarone* (1982) 137 Cal.App.3d 701, 705, 187 Cal.Rptr. 159.)

Where substantial evidence would support a verdict of guilty on a lesser included offense, the trial court is required to instruct on that offense sua sponte, even over the defendant's objection; the failure to do so is error.  (*People v. Duncan* (1991) 53 Cal.3d 955, 969, 281 Cal.Rptr. 273, 810 P.2d 131.)  If defense counsel refuses the

instruction for a deliberate tactical purpose, the trial court's error will be deemed "invited" and therefore harmless. (*Ibid.; People v. Lara* (1994) 30 Cal.App.4th 658, 673-674, 35 Cal.Rptr.2d 886.) This is so even if counsel appears to have acted out of an incorrect understanding of the law. (*People v. Cooper* (1991) 53 Cal.3d 771, 831, 281 Cal.Rptr. 90, 809 P.2d 865.)  "A claim that the tactical choice was uninformed or otherwise incompetent must, like any such claim, be treated as one of ineffective assistance of counsel." (*Ibid.*)

Trial counsel agreed with the prosecutor that the evidence did not support an instruction on attempted voluntary manslaughter as a lesser included offense. Counsel informed the court he did not argue attempted voluntary manslaughter as a lesser included offense to the jury and defendant "specifically requested that we not request the lesser offense and he understands that and the consequences of doing so."  Later, counsel elaborated on his discussion with defendant, stating that while the lesser included offense "transcendently . . . could factually apply, . . . it was specifically our discussions and his decision.  And I agree with it, that it is not what we were trying to argue in regards to the case."

Attempted voluntary manslaughter requires proof of a specific intent to kill.  (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549, 5 Cal.Rptr.3d 800.)  Defense counsel had a rational tactical purpose in declining an instruction on attempted voluntary manslaughter, which would contradict the defense theory that defendant did not intend to kill.

In reviewing a claim of ineffective assistance on appeal, we accord great deference to trial counsel's tactical decisions (*In re Fields* (1990) 51 Cal.3d 1063, 1069-1070, 275 Cal.Rptr. 384, 800 P.2d 862), and reverse "'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' [Citation]" (*People v. Frye* (1998) 18 Cal.4th 894, 979-980, 77 Cal.Rptr.2d 25, 959 P.2d 183, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn.22, 87 Cal.Rptr.3d 209, 198 P.3d 11).  Defense counsel's decision was informed by a rational tactical purpose, not presenting inconsistent defense theories to the jury. Defendant's claim of ineffective assistance of counsel is without merit.

(People v. Doucet, slip op. at 5-8.)

          2.  Legal Standards

Under Strickland v. Washington, 466 U.S. 668, 687 (1984), to demonstrate ineffective assistance of counsel, petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Id.  A deficient performance is one in

1    which "counsel made errors so serious that counsel was not functioning as the 'counsel'

2    guaranteed by the Sixth Amendment." Id.  Petitioner must show that defense counsel's

3    representation was not within the range of competence demanded of attorneys in criminal cases,

4    and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would

5    have been different.  Hill v. Lockhart, 474 U.S. 52, 57 (1985).  An ineffective assistance of

6    counsel claim should be denied if the petitioner fails to make a sufficient showing under either

7    one of the Strickland prongs.  See Strickland, 466 U.S. at 697 (courts may consider either prong

8    of the test first and need not address both prongs if the defendant fails on one).

9        A reviewing federal habeas court must accord tactical decisions by trial counsel

10   considerable deference.

11       [C]ourts may not indulge "post hoc rationalizations" for counsel's
         decisionmaking that contradicts the available evidence of counsel's
12       actions . . . neither may they insist counsel confirm every aspect of
         the strategic basis for his or her actions.  There is a "strong
13       presumption" that counsel's attention to certain issues to the
         exclusion of others reflects trial tactics rather than "sheer neglect."
14

15   Richter, 131 S. Ct. at 790 (citations omitted).  Tactical decisions of trial counsel deserve

16   deference when:  (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel

17   makes an informed decision based upon investigation; and (3) the decision appears reasonable

18   under the circumstances.  See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

19       In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

20       The question "is not whether a federal court believes the state
         court's determination" under the Strickland standard "was incorrect
21       but whether that determination was unreasonable -- a substantially
         higher threshold."  Schriro [v. Landrigan] 550 U.S. 465, 473
22       [2007].  And, because the Strickland standard is a general standard,
         a state court has even more latitude to reasonably determine that a
23       defendant has not satisfied that standard.  See Yarborough v.
         Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule
24       application was unreasonable requires considering the rule's
         specificity.  The more general the rule, the more leeway courts have
25       in reaching outcomes in case-by-case determinations").

26   Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  It is through this doubly deferential lens that

27   a federal habeas court reviews Strickland claims under the § 2254(d)(1) standard.  Knowles, 556

28   U.S. at 123, citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003).  This  standard "translates to a

11

1  narrower range of decisions that are objectively unreasonable under AEDPA." <u>Cheney v.</u>

2  <u>Washington</u>, 614 F.3d 987, 995 (9th Cir. 2010).  Thus, the focus is on whether the state-court

3  decision holding that counsel was not ineffective constituted an "unreasonable application of

4  federal law[,] [which] is different from an incorrect application of federal law." <u>Richter</u>, 131 S.

5  Ct. at 785.

6
> Under § 2254(d), a habeas court must determine what arguments or
> theories supported or, as here, could have supported, the state
7  > court's decision; and then it must ask whether it is possible
> fairminded jurists could disagree that those arguments or theories
8  > are inconsistent with the holding in a prior decision of this Court.

9  <u>Richter</u>, 131 S. Ct. at 786.

10  i. <u>Assault with a Firearm</u>

11  A request by counsel for a jury instruction on assault with a firearm likely would have

12  been unsuccessful.  It can reasonably be inferred from the record that the prosecutor would not

13  have given consent to the lesser-related offense instruction, which counsel was required to obtain

14  under state law.  <u>See</u> Birks, 19 Cal.4th at 136.  As the state appellate court pointed out, the record

15  contains no indication that the prosecutor was amenable to the instruction, and it was notable that

16  the prosecutor did not request such an instruction even though she could have done so.  Petitioner

17  made no attempt to demonstrate that had trial counsel requested such an instruction, the

18  prosecution would have agreed.  Accordingly, the undersigned finds that any request by trial

19  counsel for such an instruction would have been futile.  It is well settled that an attorney cannot

20  be ineffective for failing to make a futile or meritless action.  <u>James v. Borg</u>, 24 F.3d 20, 27 (9th

21  Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of

22  counsel.") (citations omitted).

23  ii. <u>Attempted Voluntary Manslaughter</u>

24  Petitioner points out that the record demonstrates that trial counsel specifically requested

25  that the jury not be instructed on attempted voluntary manslaughter, and that despite facts in

26  evidence to support the instruction on the lesser included offense, counsel stated in open court

27  that he made this decision in consultation with petitioner in light of the chosen alternate theory of

28  defense.  (ECF No. 1 at 37-38, citing RT 864-65.)  The undersigned finds that petitioner's trial

12

1  counsel was not unreasonable or ineffective in making a reasonable tactical decision to forego an

2  attempted voluntary manslaughter instruction that would have conflicted with petitioner's defense

3  theory of the case.  See Strickland, 466 U.S. at 687-88; see also Butcher v. Marquez, 758 F.2d

4  373, 376-77 (9th Cir. 1985) ("Defense counsel need not request instructions inconsistent with its

5  trial theory[,]" and counsel was not ineffective for choosing to forego a voluntary manslaughter

6  instruction when the defense theory was that defendant did not commit the charged act, not that

7  he committed it under provocation); Matylinsky v. Budge, 577 F.3d 1083, 1092 (9th Cir. 2009),

8  cert. denied, 130 S. Ct. 1154 (2010) (petitioner's claim that jury should have been instructed on

9  manslaughter and provocation was "meritless" when petitioner failed to show that counsel's

10  selected strategy of pursuing an intoxication defense was unreasonable).

11         As noted by the state court, defense counsel was pursuing a theory of voluntary

12  intoxication, arguing that petitioner did not intend to kill Hernandez.  (RT 864-65.)  In closing

13  argument, trial counsel argued that petitioner was intoxicated, stumbled and tripped at the end of

14  the bed, causing petitioner's gun to fire, which was substantiated by Hernandez being shot in the

15  foot.  (RT 830-32.)  Trial counsel argued that the evidence demonstrated that petitioner had no

16  intent to harm anyone.  (RT 832.)  Because attempted voluntary manslaughter requires proof of a

17  specific intent to kill, defense counsel had a rational strategy in declining to instruct on attempted

18  voluntary manslaughter.  Therefore, the state appellate court found that there was a reasonable

19  explanation for trial counsel's decision to exclude the attempted voluntary manslaughter

20  instruction.  Petitioner failed to demonstrate that trial counsel's selected trial strategy to pursue an

21  intoxication defense was unreasonable.

22         The undersigned finds no basis for disturbing the state court's determination that

23  counsel's performance was not deficient, and does not reach the issue of prejudice.

24              3.  Conclusion:  Ineffective Assistance of Counsel Claims

25         The state court's rejection of these claims was not contrary to, or an unreasonable

26  application of, the Strickland standard.  Accordingly, petitioner is not entitled to habeas relief on

27  his ineffective assistance of counsel claims.

28  ////

1

    B. <u>Failure to Instruct Jury to View Alleged Admissions with Caution</u>

2

    Petitioner claims that the trial court erred when it failed to instruct the jury that evidence

3

of petitioner's alleged admissions should be viewed with caution.  (ECF No. 1 at 45.)  He

4

contends that the trial court should have provided the following cautionary instruction:

5

      You have heard evidence that the defendant made oral or written
statements before the trial.  You must decide whether or not the

6

defendant made any of these statements, in whole or in part.  If you
decide that the defendant made such statements, consider the

7

statements, along with all the other evidence in reaching your
verdict.  It is up to you to decide how much importance to give to

8

such statements.

9

      Consider with caution any statement made by the defendant
tending to show his guilt unless the statement was written or

10

otherwise recorded.

11

(ECF No. 1 at 45, citing CALCRIM No. 358.)  Respondent argues that this claim is groundless.

12

    1. <u>State Court Decision</u>

13

    The last reasoned rejection of petitioner's claim that the trial court erred when it failed to

14

instruct the jury to view petitioner's alleged admissions with caution is the decision of the

15

California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The

16

state court addressed this claim as follows:

17

    Next, defendant contends that the trial court erred in failing to
instruct sua sponte that defendant's out-of-court statements must be

18

viewed with caution.

19

    A trial court has a sua sponte duty to instruct the jury to view
evidence of a defendant's oral admissions with caution.  (*People v.*

20

*Carpenter* (1997) 15 Cal.4th 312, 392, 63 Cal.Rptr.2d 1, 935 P.2d
708, superseded by statute on other grounds as stated in *Verdin v.*

21

*Superior Court* (2008) 43 Cal.4th 1096, 1106, 77 Cal.Rptr.3d 287,
183 P.3d 1250.)  The purpose of a cautionary instruction is to assist

22

the jury in determining if a statement was in fact made.  (*Carpenter*,
at p. 393, 63 Cal.Rptr.2d 1, 935 P.2d 708.)  A cautionary instruction

23

only applies to a defendant's inculpatory statements.  (*People v.*
*Slaughter* (2002) 27 Cal.4th 1187, 1200, 120 Cal.Rptr.2d 477, 47

24

P.3d 262.)  "Since the cautionary instruction is intended to help the
jury to determine whether the statement attributed to the defendant

25

was in fact made, courts examining the prejudice in failing to give
the instruction examine the record to see if there was any conflict in

26

the evidence about the exact words used, their meaning, or whether
the admissions were repeated accurately.  [Citations.]"  (*People v.*

27

*Pensinger* (1991) 52 Cal.3d 1210, 1268, 278 Cal.Rptr. 640, 805
P.2d 899.)

28

14

1    Hernandez testified that defendant said, "I'm going to kill you
     mother fucker," and "I'm going to kill you," and continued to
2    threaten to kill him while they fought and after he was pinned on
     the ground.  Turner told the police defendant threatened to kill both
3    of them, but at trial said that she just repeated what Hernandez said
     he had heard, and she only heard defendant say to Hernandez "I'll
4    kick your ass and her ass too."   The trial court should have
     instructed sua sponte that defendant's admissions should be viewed
5    with caution.

6    The failure to give a cautionary instruction on a defendant's
     admissions is reversible error only if it is reasonably probable that
7    the jury would have reached a more favorable result had the
     instruction been given.  (*People v. Carpenter*, *supra*, 15 Cal.4th at
8    p. 393, 63 Cal.Rptr.2d 1, 935 P.2d 708.)  There was only limited
     disagreement   regarding   defendant's   statements   --   Turner's
9    statements to the police essentially agreed with Hernandez's
     testimony regarding defendant's statements, but her trial testimony
10   indicated she never heard defendant expressing an intent to kill.
     However, there was other evidence of defendant's intent to kill,
11   particularly his firing multiple shots at Hernandez at close range.  In
     addition, the jury was properly instructed on judging the credibility
12   of a witness, "thus providing guidance on how to determine
     whether to credit the testimony."   (*Carpenter*, at p. 393, 63
13   Cal.Rptr.2d 1, 935 P.2d 708.)   Accordingly, it is not reasonably
     probable that the error was prejudicial.  (*Ibid.*)

14

15   (People v. Doucet, slip op. at 8-10.)

16          2. Legal Standards

17          Generally, "'federal habeas corpus relief does not lie for errors of state law.'"  Estelle, 502

18   U.S. at 67, quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  To obtain federal collateral relief

19   for an error in a jury charge, the petitioner must show that the instructional error so infected the

20   entire trial that the resulting conviction violated due process.  Estelle, 502 U.S. at 72.  The error

21   must have had "substantial and injurious effect or influence in determining the jury's verdict."

22   California v. Roy, 519 U.S. 2, 4-6 (1996) (citation omitted); O'Neal v. McAninch, 513 U.S. 432,

23   436 (1995) (citation omitted); Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) (citation

24   omitted).  The jury instructions must be considered as a whole and in the context of the trial

25   record.  Estelle, 502 U.S. at 72.  An omission or an incomplete jury instruction is less likely to be

26   prejudicial than a misstatement of the law.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Thus,

27   a habeas petitioner whose claim involves the failure to give a particular instruction bears an

28   "especially heavy" burden.  Id.  "An omission, or an incomplete instruction, is less likely to be

1  prejudicial than a misstatement of the law." Id., 431 U.S. at 155; see also Villafuerte v. Stewart,

2  111 F.3d 616, 624 (9th Cir. 1997).

3              3. Discussion

4         Here, petitioner argues that his constitutional rights were violated because the trial court

5  did not instruct the jury with CALCRIM 358.  CALCRIM 358 is given in California when there

6  is evidence of an out-of-court statement by the defendant.  Both victims, Julie Turner and Joe

7  Hernandez, testified as to statements petitioner allegedly made during the offenses at issue here.

8  Petitioner is correct in that the trial court did not instruct the jury with CALCRIM 358.  However,

9  the fact that the instructions were allegedly incorrect under state law is not a basis for federal

10  habeas relief.  See Marshall v. Lonberger, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process

11  Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of

12  state evidentiary rules").

13         Petitioner's claim fails because he has not met the "heavy burden" of demonstrating that

14  the trial court's failure to instruct sua sponte on CALCRIM 358 so infected his trial that the

15  resulting conviction violated due process.  Estelle, 502 U.S. at 72.  The omission of jury

16  instruction CALCRIM 358 does not rise to the level of a due process violation because it did not

17  have the effect of removing the burden from the prosecution of proving every element of the

18  crime charged beyond a reasonable doubt.  See Middleton v. McNeil, 541 U.S. 433, 437 (2004)

19  (no unreasonable application of federal law where state appellate court decided that a jury

20  instruction's single incorrect statement of the "imperfect self-defense" standard did not render the

21  instruction reasonably likely to have misled the jury).

22         Furthermore, the omitted jury instruction must be evaluated in the context of the overall

23  charge to the jury as a component of the entire trial process.  Henderson, 431 U.S. at 154.

24  Considering the omitted jury instruction in the context of all the instructions provided, the

25  undersigned concludes that the omission of CALCRIM 358 did not so infect the trial to render the

26  trial fundamentally unfair.  Estelle, 502 U.S. at 72.  CALCRIM 358 essentially provides that the

27  jury must decide whether the defendant made any alleged out of court statements in whole or in

28  ////

1   part, consider the statement along with all the other evidence, and consider the out-of-court

2   statement with caution.

3   　　　Here, the jury was thoroughly instructed that the jury must decide what the facts are, that

4   the jury must follow the law as instructed by the court, and was cautioned to pay careful attention

5   to all instructions and consider them together.  (RT 871-72.)  The jury was instructed on witness

6   credibility; specifically, the jury was instructed that they alone must judge the credibility of the

7   witnesses and may believe all, part, or none of the witnesses' testimony.  (RT 876-77.)  The jury

8   also was instructed that in evaluating a witnesses' testimony, they may consider anything that

9   reasonably tends to prove or disprove the truth or accuracy of that testimony, including the

10  reasonableness of the testimony in light of all the other evidence in the case.  Id.  In addition, the

11  jury was instructed not to automatically reject testimony just because of inconsistencies or

12  conflicts, and how to address any such inconsistencies.  (RT 872.)  The jury was specifically

13  instructed that before the jury could conclude that the testimony of one witness proves a fact, the

14  jury should carefully review all the evidence.  (RT 879.)  Finally, the trial court instructed the jury

15  on how to use evidence of statements made before trial:

16
17
18
　　　　　You've heard evidence of statements that a witness made before the
　　　　　trial.  If you decide that the witness made statements, you may use
　　　　　those statements in two ways:  One, to evaluate whether the
　　　　　witness's testimony in court is believable; and two, as evidence that
　　　　　the information in those earlier statements are true.

19  (RT 880.)

20  　　　Thus, the jury instructions that were given to the jury were sufficient to apprise the jury to

21  view all testimony with caution.  A jury is presumed to follow its instructions.  Richardson v.

22  Marsh, 481 U.S. 200, 211 (1987).  In light of the instructions that the jury did receive and given

23  that the omitted instruction did not remove the prosecution's burden of proving every element of

24  the crime, the undersigned concludes that the failure to give CALCRIM 358 did not render the

25  trial fundamentally unfair.  See Estelle, 502 U.S. at 72.

26  　　　Finally, the omission of CALCRIM 358 did not have a substantial and injurious effect or

27  influence on the verdict.  Brecht, 507 U.S. at 638.  As argued by respondent, the testimony of

28  victims Turner and Hernandez while not exact, was consistent to confirm that petitioner

1   threatened both of them during the incident.  Turner and Hernandez both testified at trial that

2   petitioner repeatedly asked Turner, "Why do you do me that way," and asked Hernandez "Why

3   did she do this to me?"  (RT 57, 59, 62, 98, 99, 135, 350, 388, 477.)  Turner testified that

4   petitioner said, "I'll kick your ass and her ass, too."  (RT 85.)  Hernandez testified that petitioner

5   said, "I'm going to kill you, mother-fucker," and then started shooting at Hernandez.  (RT 351,

6   358-59.)  Hernandez testified that when he heard Turner screaming, he heard petitioner say to

7   Turner, "I'm going to kill you, bitch."  (RT 433.)  Hernandez testified that petitioner claimed he

8   was going to kill both Turner and Hernandez.  (RT 348.)  As argued by respondent, there was no

9   evidence that petitioner did not threaten either victim.

10        Importantly, there was substantial evidence that late at night, petitioner broke into

11   Turner's home, assaulted her with a firearm, and shot at Hernandez when Hernandez attempted to

12   assist Turner.  (RT 52-136; 273-81; 336-88.)  Despite the prosecution's use of petitioner's alleged

13   admissions to demonstrate consciousness of guilt during the prosecution's closing arguments, the

14   evidence against petitioner was overwhelming.  Hernandez suffered a gunshot wound to his right

15   foot, which fractured his second toe (RT 621), and Turner sustained a large bump to her head (RT

16   599), and a concussion.  In light of this strong evidence, the omission of CALCRIM 358 did not

17   substantially influence the verdict.

18        Finally, petitioner has not established and the undersigned is not aware of any clearly

19   established federal law that stands for the proposition that a constitutional error occurs where a

20   court fails to give an instruction similar to CALCRIM 358.

21        Accordingly, petitioner is not entitled to habeas corpus relief on this ground.

22        C.   Failure to Instruct Jury on Lesser Included Offense

23        Petitioner claims that the trial court erroneously and prejudicially erred when it failed to

24   instruct the jury on attempted criminal threat as a lesser included offense of making a criminal

25   threat against Julie Turner (count five).  Respondent counters that petitioner is not entitled to

26   habeas relief because no clearly established Supreme Court precedent requires a state court to

27   instruct on lesser included offenses in a non-capital case.

28   ////

1       1. <u>State Court Decision</u>

2           The last reasoned rejection of petitioner's claim that the trial court erred when it failed to

3   instruct on the lesser-included offense is the decision of the California Court of Appeal for the

4   Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as

5   follows:

> Finally, defendant argues the trial court erred in failing to instruct
> sua sponte on the lesser included offense of attempted criminal
> threat with respect to the charge of criminal threats against Turner.
>
> Attempted criminal threats is a lesser included offense of criminal
> threats.  (*People v. Toledo* (2001) 26 Cal.4th 221, 226, 230, 109
> Cal.Rptr.2d 315, 26 P.3d 1051.)  In *Toledo*, the California Supreme
> Court explained that a person commits attempted criminal threats
> "if a defendant, . . . acting with the requisite intent, makes a
> sufficient threat that is received and understood by the threatened
> person, but, for whatever reason, the threat does not actually cause
> the threatened person to be in sustained fear . . . ." (*Id.* at p. 231,
> 109 Cal.Rptr.2d 315, 26 P.3d 1051.)  Defendant asserts the
> evidence that Turner sustained fear from defendant's threats was
> weak enough to support an instruction on the lesser offense.
>
> Turner testified she was not afraid when defendant pointed the gun
> at her because she thought it was unloaded.  At trial, she denied that
> defendant ever threatened to kill either Hernandez or herself.  She
> did not recall telling a police officer she was scared when defendant
> pulled a gun on her.
>
> Hernandez testified that before he entered Turner's house, he heard
> Turner yelling at defendant to stop, and the argument inside
> Turner's home sounded like someone was getting hurt.  A police
> officer who interviewed Turner shortly after the incident noted she
> was crying hysterically when they first met, and she was in fear and
> shock.  Turner told the officer defendant would have killed her if
> Hernandez had not shown up.  When Hernandez's wife comforted
> Turner after the incident, Turner kept apologizing about how she
> almost got Hernandez killed.
>
> Based on this evidence, the trial court erred in failing to instruct on
> attempted criminal threats because Turner's trial testimony
> supported an instruction on the lesser included offense.
>
> The effect of the failure to instruct on a lesser included offense is
> tested under the "*Watson* standard." (*People v. Breverman* (1998)
> 19 Cal.4th 142, 178, 77 Cal.Rptr.2d 870, 960 P.2d 1094, citing
> *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)  Under
> *Watson*, the court's failure to instruct on a lesser included offense is
> harmless if it was not reasonably probable that the jury would have
> found the defendant guilty of the lesser offense, but not the greater.
> (See *Breverman*, at pp. 176-178, 77 Cal.Rptr.2d 870, 960 P.2d

1094.)  This test places a burden on the defendant to demonstrate prejudice, a burden he has not met.

There was ample evidence Turner was in fear -- her demeanor after the attack and her statements to an officer and Hernandez's wife. Turner, who professed her love for defendant on the stand, had motive to minimize defendant's culpability.  The jury rejected her testimony lessening defendant's guilt in other contexts.  Turner testified defendant hit her with his fists, not his gun, but the jury nonetheless convicted defendant of assault with a firearm against Turner and found he personally used a weapon while committing the offense.  Although Turner testified that defendant's gun discharged as he was falling down, the jury concluded defendant intended to kill Hernandez and found defendant guilty of attempted murder.  For these reasons, we conclude it is not reasonably probable that the jury would have found defendant guilty of the lesser offense, but not the greater.

(People v. Doucet, slip op. at 10-12.)

2.  Legal Standards

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. Hopper v. Evans, 456 U.S. 605, 611 (1982); Beck v. Alabama, 447 U.S. 625, 638 (1980). However, the Supreme Court has not decided whether this rationale also extends to non-capital cases.  See Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999).  The Ninth Circuit, like several other federal circuits, has declined to extend Beck to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding").

3.  Discussion

In his supplemental brief, petitioner relies on Keeble v. United States, 412 U.S. 205, 208 (1973), arguing that due process requires the state to give lesser included offense instructions when the evidence warrants such an instruction.  (ECF No. 15 at 2.)  However, petitioner's

1    argument is unavailing.  The prisoner in <u>Keeble</u> challenged the denial of a jury instruction for a

2    lesser included offense in the prosecution of a Native American for a federal crime under the

3    Major Crimes Act of 1885; it was not a federal habeas case challenging state court proceedings.

4    <u>Id.</u> at 208.

5         Therefore, the decision of the California courts denying petitioner relief as to this claim

6    was not contrary to United States Supreme Court authority as set forth in the <u>Beck</u> decision.

7    Further, to find a constitutional right to a lesser-included offense instruction here would require

8    the application of a new rule of law in the context of a habeas petition, something the court cannot

9    do under the holding in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  <u>See Solis</u>, 219 F.3d at 929 (habeas

10   relief for failure to instruct on lesser included offense in non-capital case barred by <u>Teague</u>

11   because it would require the application of a new constitutional rule); <u>Turner v. Marshall</u>, 63 F.3d

12   807, 819 (9th Cir. 1995) (same), <u>overruled on other grounds by Tolbert</u>, 182 F.3d at 677.

13        Accordingly, petitioner is not entitled to federal habeas relief with respect to this jury

14   instruction error claim.

15   VI.  <u>Conclusion</u>

16        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

17   habeas corpus be denied.

18        These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20   after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

23   he shall also address whether a certificate of appealability should issue and, if so, why and as to

24   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

25   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

26   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

27   service of the objections.  The parties are advised that failure to file objections within the

28   ////

1 │ specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

2 │ F.2d 1153 (9th Cir. 1991).

3 │ Dated:  May 12, 2014

4 │

5 │ /douc0031.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

22